FILED & JUDGMENT ENTERED
Christine F. Winchester

Nov 03 2010

Clerk, U.S. Bankruptcy Court
Western District of North Carolina

_____
George R. Hodges
United States Bankruptcy Judge

UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION

| | |
|---|---|
| STANLEY M. CAMPBELL, *Trustee in Bankruptcy for ESA Environmental Specialists, Inc.*<br>Debtor | Case No. 07-31532 |
| STANLEY M. CAMPBELL, *Trustee in Bankruptcy for ESA Environmental Specialists, Inc.*<br>Debtor, | |
| v. | Adversary Proceeding<br>No. 09-3143 |
| THE HANOVER INSURANCE COMPANY<br>Defendant. | |

**ORDER GRANTING THE HANOVER INSURANCE COMPANY'S**
<u>**MOTION FOR SUMMARY JUDGMENT**</u>

This matter came before the Court for hearing on September 15, 2010 on the Motion of The Hanover Insurance Co. ("Hanover") for Summary Judgment pursuant to Federal Rule of Civil Procedure 56 (made applicable to this adversary proceeding by Federal Rule of Bankruptcy Procedure 7056) (the "Motion") [Docket no. 13]. The Motion was supported by a brief [Docket no. 22], the Affidavit of Tammy M. Laub [Docket no. 14] and the Declaration of Charles Jacob Cole [Docket no. 21]. The Plaintiff-Trustee filed a Response Objecting to Hanover's Motion for Summary Judgment [Docket no. 15] which was supported by a Declaration of Chapter 7 Trustee [Docket no. 17], and an Amended

PPAB 1728966v3

Declaration of Chapter 7 Trustee [Docket no. 18]. The Plaintiff-Trustee also filed a supplemental response in opposition to the Motion [Docket no. 24], to which was attached the Affidavit of John Francis Barry III. Both Plaintiff and Hanover were represented by counsel at the hearing. In addition to the pleadings described above, the Court also considered (without objection) the record, pleadings and transcripts of hearings in the base case, *In re* ESA Environmental Specialists, Inc. (07-31532), including the sworn testimony of witnesses at those hearings and the statements of counsel for Prospect Capital Corporation. Based upon a review of those matters and the arguments of counsel at the hearing, the Court finds that the following are the undisputed facts in this matter.

    A.    ESA Environmental Specialists, Inc. ("ESA" or the "Debtor") was a full service environmental, construction, architectural, and industrial engineering firm.

    B.    ESA performed federal construction jobs, each of which required the contractor to provide both a performance bond and a payment bond under the Miller Act . 40 U.S.C. § 3131.

    C.    ESA obtained payment and performance bonds from Hanover in the fall of 2006 in connection with eight (8) government contracts (the "Original Bonds"). In the spring of 2007, due to Hanover's concern with ESA's financial ability, Hanover refused to issue new bonds for seven (7) additional government projects (the "New Bonds") unless ESA did all three of the following (the "Requirements"): (1) paid the bond premiums for the New Bonds; (2) obtained an irrevocable letter of credit in favor of Hanover in the amount of $1,375,000 (the "Letter of Credit"); and (3) executed a Letter of Credit Collateral Agreement in the form supplied by Hanover. ESA could not commence work on the seven government projects until the New Bonds had been presented to the relevant government agencies.

    D.    To obtain the Letter of Credit, ESA needed to post a certificate of deposit with SunTrust Bank, which had agreed to issue the Letter of Credit. ESA discussed this bonding issue with Prospect Capital ("Prospect"). On May 7, 2007 ESA and Prospect entered into a First Amendment to Credit Agreement. The purpose of the First Amendment was to advance $625,000 to the Debtor. On May 17, 2007, ESA and Prospect entered into a Second Amendment to Credit Agreement. The purpose of the Second Amendment was to advance $950,000 to the Debtor. Prospect sent two wires to ESA's bank

account, the first on May 8, 2007 in the amount of $625,000 and the second on May 17, 2007 for $950,000 (the "Prospect Funds"). These wire transfers were later described to the Court by Prospect's counsel as follows: "And so Prospect pumps more money into the debtor. In fact, gave the debtor about another million two so that the debtor could post that as cash security so it could keep some bonding going and then Prospect investigated the situation." [Docket no. 90, 07-31532, at 11:2-6].

E.    On May 17, 2007, ESA transferred $1,375,00 of the Prospect Funds into a certificate of deposit with SunTrust to collateralize the Letter of Credit. ESA did not use any funds to deposit into the certificate of deposit other than the Prospect Funds. On May 18, 2007, SunTrust issued the letter of credit to Hanover. On May 18, 2007, ESA delivered the bond premiums and the Letter of Credit Collateral Agreement to Hanover's agent, Knauff Insurance. This satisfied all of the Requirements. In exchange, Knauff delivered the New Bonds to ESA on May 18, 2007. ESA then delivered the New Bonds to the governmental agencies.

F.    On August 1, 2007, ESA filed a voluntary Chapter 11 petition with this Court. After the filing of the bankruptcy petition, Hanover drew on the Letter of Credit and received a payment from SunTrust Bank in the amount of $1,375,000.

G.    On September 28, 2007, the Court entered an order approving the sale of substantially all of the assets of ESA to Prospect Capital (or its designee). [Docket no. 141, 07-31532]. The sale included an assumption and assignment to Prospect Capital's affiliate, ICS, of many of the Hanover bonded contracts, as well as the sale of all avoidance actions under the Bankruptcy Code. ICS failed to complete the Hanover bonded contracts which it had been assigned, and the Court entered an order on February 15, 2008 permitting Hanover to exercise its rights as surety to complete the jobs.

H.    On July 10, 2009, the Court entered a "Stipulation between Chapter 7 Trustee and Prospect Capital Corporation and Order Approving Stipulation" (the "Stipulation"). [Docket no. 256, 07-31532]. The Stipulation provided, among other things, that the Trustee would have standing to pursue avoidance actions (despite the prior sale of such actions) with a split of any proceeds (after payment of the Trustee's fees and costs) in the following percentages: 75% to Prospect and 25% to the Trustee. In

addition, the Stipulation approved an unsecured claim to Prospect in the amount of $11,775,000, which claim was entitled to pro rata distribution along with other unsecured claimants from the 25% recovery of the Trustee. Because the Stipulation was entered without notice to any parties, the Court provided that it must be served on all parties in interest, who would thereafter have an opportunity to object and request a hearing on the Stipulation. Hanover filed an objection to the Stipulation [Docket no. 266, 07-31532], and a hearing on that objection was continued until the hearing on the Motion.

I.  After entry of the Stipulation, the Chapter 7 Trustee filed this adversary proceeding against Hanover on July 31, 2009 claiming that Hanover was an indirect beneficiary of the transfer of the Prospect Funds into the certificate of deposit and the transfer of the Prospect Funds was avoidable as a preferential transfer under 11 U.S.C. § 547.

J.  The Trustee also alleged in the complaint that Hanover was the recipient of a check in the amount of $21,319.42, which was also avoidable as a preference. However, in its pleadings and at the hearing, the Trustee admitted that this check was paid to a party other than Hanover, and consented to the entry of summary judgment with regard to that particular claim.

Based upon the pleadings and record in this case and the base case, and the arguments of counsel at the hearing, the Court concludes that summary judgment in favor of Hanover is appropriate on all of the Trustee's claims because:

1. There are no genuine issues of material fact which would preclude summary judgment under Rule 56 of the Federal Rules of Civil Procedure and Rule 7056 of the Federal Rules of Bankruptcy Procedure.

2 Hanover is entitled to summary judgment as a matter of law because ESA's transfer of the Prospect Funds into the SunTrust certificate of deposit was not an avoidable transfer under § 547(b).

3. First, the Prospect Funds were not really property of ESA or the bankruptcy estate as a practical matter, and the Trustee failed to meet his burden of proving under § 547(b) that there was a "transfer of an interest of the debtor in property." The Prospect Funds which were placed into the SunTrust certificate of deposit were specifically provided by Prospect Capital for ESA to collateralize the

Letter of Credit in order to obtain the New Bonds, as specifically stated by counsel for Prospect at the August 8, 2007 first hearing before this Court. There was no diminution to ESA's estate because the Prospect Funds came solely from a third party. The funds placed into the SunTrust certificate of deposit were Prospect's funds that were simply a pass-through in ESA's bank account. Even if the funds could have been characterized as ESA's, they were ESA's only for the specific purpose of putting them into the SunTrust certificate of deposit. Under the Fourth Circuit's opinion *In re* Decker, there was no preferential treatment in fact for this transfer because it did not benefit Hanover out of estate assets to the detriment of other creditors. *Virginia National Bank v. Woodson* (*In re* Decker), 329 F.2d 836 (4th Cir. 1964). Hanover has demonstrated that it has a complete earmarking defense.

    4. Second, Hanover has a complete new value defense. The transfer of the Prospect Funds was: (1) a contemporaneous exchange for new value given to ESA by Hanover in the form of the New Bonds and the federal government contracts which ESA was able to obtain and perform after receipt of the New Bonds and (2) a substantially contemporaneous exchange under 11 U.S.C. § 547(c)(1). The Letter of Credit was provided to Hanover (and the Requirements satisfied) on May 18, 2007, the same date that Hanover (through its agent Knauff) gave ESA the New Bonds.

    5. There was no evidence contesting the fact that the exchange was intended to be (and was in fact) a contemporaneous exchange for new value. Rather, the Trustee claimed that Hanover had failed to meet its burden of specifically proving the amount of new value that was given by Hanover. Hanover provided evidence that in exchange for the Prospect Funds, ESA received the New Bonds in the total face amount of $7,889,350.86. Moreover, the New Bonds also provided ESA with the ability to proceed with the new government contracts and to earn revenue in excess of $1,375,000. There being no evidence to the contrary, Hanover met its burden of proving new value in excess of the amount of the Prospect Funds.

    6. Third, the Court finds that requiring Hanover to return the funds drawn on the Letter of Credit (the vast majority of which would end up being returned to Prospect) would be a complete travesty in the circumstances as they played out. As a surety, Hanover has been required to expend funds in connection with the effort to complete ESA's obligations for performance and payment on the bonded contracts and

discharge of the bonded obligations secured by the Letter of Credit. This was the very purpose and risk which ESA and Prospect knowingly took when they placed the Prospect Funds in the certificate of deposit to secure the Letter of Credit for Hanover. It would be inequitable to require Hanover to return the portion of the Prospect Funds used to cover the costs to complete the Hanover bonded jobs and pay the associated obligations when Hanover did the work, and paid the obligations, which jobs were supposed to have been completed first by ESA and then by Prospect's affiliate, ICS, when it assumed certain of the jobs.

WHEREFORE, the Motion is GRANTED and SUMMARY JUDGMENT is hereby ENTERED in favor of Hanover.

This Order has been signed electronically.                United States Bankruptcy Court
The judge's signature and court's seal
appear at the top of the Order.